IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| SVETLANA SERGEYEVNA UNGAR, | ) | |
| | ) | CASE NO. BK07-41976-TLS |
| Debtor(s). | ) | A08-4015-TLS |
| OLIM ISLAMOV, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| SVETLANA SERGEYEVNA UNGAR, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the defendant's motion for summary judgment (Fil. #27) and resistance by the plaintiff (Fil. #66). In addition, the defendant has filed motions to strike portions of the plaintiff's evidence (Fils. #70 and 72). Paul D. Boross represents the debtor-defendant, and Darla J. Johnson and Rodney K. Vincent represent the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The motions are denied.

The plaintiff alleges that he invested and lost money with the debtor, who was not a professional investment advisor or securities broker/dealer. He argues that the debt owed to him – $1,131,249, which includes money he gave her to invest as well as anticipated earnings on the investment – should not be discharged because the debtor obtained the funds through fraud and false representations under 11 U.S.C. § 523(a)(2), fiduciary fraud or defalcation under § 523(a)(4), and willful and malicious injury under § 523(a)(6). The debtor has moved for summary judgment, asserting that the plaintiff's evidence fails to establish a genuine issue of material fact.

I. Summary Judgment Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-34 (8th Cir. 2004).

## II. Facts

The parties agree on the following facts of the case:

1.  The plaintiff, Mr. Islamov, emigrated to the United States from Tajikistan in 2000. He lives in Lincoln, Nebraska.

2.  Mr. Islamov graduated from an economics university in Moscow, followed by service in the Soviet army. He lived in Moscow for 23 years.

3.  He was an auditor for the Ministry of Foreign Affairs in the former Soviet Union, worked for the Soviet Ministry of Foreign Trade, served as a finance director for a scientific industrial association, formed his own company to conduct market research and facilitate trade (in essence, acting as a broker for goods traded in the early days of capitalism after the break-up of the Soviet Union), and consulted for a Tajik/American joint venture to assist in cotton production on Tajikistan's collective farms.

4.  The debtor-defendant, Ms. Ungar, emigrated to the United States from Moldova.

5.  Ms. Ungar graduated from Doane College in Crete, Nebraska.

6.  She has worked for various entities in Lincoln, Nebraska, as a vocational counselor, bookstore manager, investment operations assistant, computer operator, and a driver and warehouse assistant.

7.  Mr. Islamov tendered $493,891.67 to Ms. Ungar from 2003 to 2007.

8.  Ms. Ungar executed two promissory notes to Mr. Islamov in August 2007 totaling $1,131,249.[1]

---

[1] The notes are not in evidence, and neither party seems to be arguing that the debt at issue is based on the notes.

The parties each took depositions and submitted excerpts from those transcripts for the court's consideration on the summary judgment motion. The partial transcripts give only a partial picture of the factual background of the case, but the following information can be gleaned from the evidence: Mr. Islamov owns and operates a Lincoln company that buys, sells, and repairs automobiles in Lincoln. In 2003, Mr. Islamov began to deliver funds to Ms. Ungar for her to invest on his behalf. According to Mr. Islamov, and unrebutted by Ms. Ungar, she told him she had an Ameritrade account and profitably engaged in day-trading. She offered to do the same for Mr. Islamov in exchange for a percentage of the profits. Mr. Islamov contributed his own money, including advances on his credit cards, to her on a regular basis, and solicited friends and family members for funds to do the same. Although Ms. Ungar now characterizes the transactions as "loans" from Mr. Islamov, she regularly reported significant profits to him, but by March 2007 was unable to make any payments to him. She filed a Chapter 7 bankruptcy petition in October 2007, and this adversary proceeding followed.

### III. Motions to Strike

The debtor-defendant has moved to strike ¶¶ 7[2], 8, 10, and 12 from Mr. Islamov's affidavit, and to strike a spreadsheet (Fil. #60) filed by Mr. Islamov which compares the balance of the investment account as reported by Ms. Ungar to the actual balance as reported in the account statements.

The debtor-defendant asserts that the material lacks foundation and should be stricken from the record. However, a prior affidavit by Mr. Islamov, containing the objected-to paragraphs and the spreadsheet, was admitted into evidence at a hearing on the debtor-defendant's motion to dismiss the case on June 26, 2008. The spreadsheet summarizes what are reportedly voluminous records from Ameritrade as well as regular, sometimes weekly, reports from Ms. Ungar of the value of the accounts. There are two other exhibits in evidence which reflect Ms. Ungar's representations of the account value. They are consistent with Mr. Islamov's spreadsheet. Because the evidence to which the debtor-defendant has objected has already been made part of the record and because foundation has been laid for the spreadsheet, the motions to strike are both overruled.

### IV. Exceptions to Discharge

A.    11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). This embodies "a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (internal citation omitted).

---

[2]The affidavit (Fil. #59) contains two paragraphs numbered 7. This motion to strike goes to the second one.

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995)). "A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *Moen* at 791 (quoting *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *Moen* at 791 (quoting *In re Malcolm*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). False representations may be by omission or commission. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *Moen* at 791 (quoting *LA Capitol Fed. Credit Union v. Melancon (In re Melancon)*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). *Moen* at 791.

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). In *Field v. Mans*, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)).  Justifiable reliance is a minimal standard and does not require the creditor to conduct an investigation, even if the failure to investigate would be considered negligent and the falsity of the representation would be readily discoverable upon an investigation. *Field v. Mans*, 516 U.S. at 70-71. Nonetheless, the creditor may not "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71.

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. *Moen*, 238 B.R. at 791 (citing *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where she should have known it to be false. *Id.*

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen* at 791 (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Van Horne*, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Duggan*, 169 B.R. at 324). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

Here, according to Mr. Islamov, Ms. Ungar induced him to invest with her by promising him a profit. Thereafter, as shown by the spreadsheets and e-mail messages, she knowingly made a number of false representations to Mr. Islamov concerning the account's purported value, deliberately giving him a false impression of the profit on his investment and intentionally causing him to deliver more money to her. This would indicate that he relied upon her fraud and false representations and suffered a loss as a result. Whether his reliance was justifiable is a question for trial and will depend on his knowledge of the risks involved in investing in the stock market as well on specifically what representations Ms. Ungar made to him.

B.   11 U.S.C. § 523(a)(2)(B)

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to the debtor's or the debtor's business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005).

The first element of the statute requires proof of the existence of a document as well as the content of the document. The scope of the statute covers more than balance sheets and financial statements. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997) (noting that Congress referred to a "much broader class" of statements regarding financial condition). "An objecting creditor who relies on a debtor's oral misrepresentations of his or her financial wherewithal cannot satisfy the threshold requirement for nondischargeability under § 523(a)(2)(B)." *Wallander v. Wallander (In re Wallander)*, 324 B.R. 746, 752 (Bankr. N.D. Iowa 2005). "To satisfy the second prong for nondischargeability under § 523(a)(2)(B), the writing must contain a statement of 'an entity's overall financial health and not a mere statement as to a single asset or liability.'" *Id.* (quoting *Zimmerman v. Soderlund (In re Soderlund)*, 197 B.R. 742, 745 (Bankr. D. Mass. 1996)).

A statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Wallander* at 752 (quoting *Burbank v. Capelli (In re Capelli)*, 261 B.R. 81, 90 (Bankr. D. Conn. 2001)); *Capital City Bank & Trust v. Kroh (In re Kroh)*, 88 B.R. 987, 994

(Bankr. W.D. Mo. 1988) (stating that a financial statement is materially false if it, as a whole, falsely represents the debtor's overall financial condition or contains major omissions).

Reasonable reliance is determined by looking at the totality of the circumstances. *Pontow*, 111 F.3d at 610. The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. *Id.* (citing *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993) (en banc)).

For discharge to be barred, the debtor must have acted with intent to deceive. An intent to deceive does not mean that the debtors acted with a "malignant heart." *Agribank, FCB v. Webb (In re Webb)*, 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000)). A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. *Fairfax State Sav. Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002). Factors to consider include whether the debtor was intelligent and experienced in financial matters, and whether there was a clear pattern of purposeful conduct. *Id.* (citations omitted). Once the creditor establishes that the debtor had actual knowledge of the false statement, the debtor cannot overcome the inference of the intent to deceive with unsupported assertions of honest intent. *Heritage Bank of St. Joseph v. Bohr (In re Bohr)*, 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001).

In this case, the record does not contain any written statements respecting the debtor's overall financial health. Regardless of whether Mr. Islamov was making an investment or a loan, the initial transfers of funds were made on Ms. Ungar's verbal representations regarding her day-trading. The subsequent e-mails and spreadsheets concern the balance of the Ameritrade account, but there is no evidence of the debtor's other assets or liabilities. Therefore, Mr. Islamov's decision to continue to transfer money to her could not have been based on a false statement in writing that pertained to Ms. Ungar's overall financial condition.

  C.  <u>11 U.S.C. § 523(a)(4)</u>

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. To prevail, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed defalcation in the course of that fiduciary relationship. *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997). "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (stating that the scope of the discharge exception is to be limited to technical trusts, not implied or constructive trusts); *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) (stating "fiduciary" is used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); *Barclays*

*Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985) (holding that for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship).

The allegations in this case do not state a § 523(a)(4) cause of action. There is no evidence that Ms. Ungar held herself out to be an investment broker or adviser or other professional that would create a fiduciary relationship. She told Mr. Islamov she did day-trading on her own behalf. The debtor-creditor relationship arising from the parties' financial transactions did not create an express trust; therefore, Ms. Ungar was not acting in a fiduciary capacity.

        D.       11 U.S.C. § 523(a)(6)

A debt may be excepted from the discharge of debts granted under 11 U.S.C. § 727 if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To except a debt from discharge under that section, a plaintiff must establish, by a preponderance of the evidence, that the debt arises from an injury that is both willful and malicious. *Sells v. Porter (In re Porter)*, 539 F.3d 889, 893 (8th Cir. 2008). In this context, the term "willful" means that the injury, not merely the act leading to the injury, must be deliberate or intentional; and a "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause financial harm. *Jamrose v. D'Amato (In re D'Amato)*, 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). The category of injury envisioned by the Supreme Court is that of an intentional tort. *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)). Debts arising from recklessly or negligently inflicted injuries are not within the ambit of § 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

While "a mere technical conversion does not necessarily satisfy the requirements for nondischargeability under § 523(a)(6)," *Auto Mart, Inc. v. Wendt (In re Wendt)*, 355 B.R. 769, 775 (Bankr. W.D. Mo. 2006), injury to property that is both willful and malicious may be excepted from discharge. *Id.*

In this case, the debt at issue – whether an investment or a loan – arises from Ms. Ungar's failure to repay Mr. Islamov money they both seem to agree he was owed. The injury giving rise to that debt was her series of misrepresentations to him about the balance in the trading account which induced him to continue to give her money. According to the plaintiff, those misrepresentations were intentional and deliberate, which means they were willful, and Ms. Ungar knew at the time she was making them that they would cause him to transfer more money to her – at least some of which was coming from his business and advances on his credit card – thereby certain or almost certain to cause financial harm to him and his family, which means her actions were malicious.

## V.  Conclusion

The motion to strike portions of Mr. Islamov's affidavit and the motion to strike the spreadsheet submitted by Mr. Islamov are denied. There is sufficient foundation for the evidence, and it was admitted on a previous motion. The motion for summary judgment is denied. The matter will be scheduled for trial on the §§ 523(a)(2)(A) and 523(a)(6) causes of action.

IT IS ORDERED:

1.  The defendant's motion to strike portions of the Islamov affidavit (Fil. #70) is denied.

2.  The defendant's motion to strike spreadsheet (Fil. #72) is denied.

3.  The defendant's motion for summary judgment (Fil. #27) is denied. The clerk shall direct the parties to file an updated joint preliminary pretrial statement and will thereafter schedule this matter for trial.

DATED: March 17, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
  *Paul D. Boross
  Darla J. Johnson
  Rodney K. Vincent
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.