IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-41976-TLS |
| | ) | |
| SVETLANA SERGEYEVNA UNGAR, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| OLIM ISLAMOV, | ) | ADV. NO. A08-04015-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SVETLANA SERGEYEVNA UNGAR, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on September 24, 2009, in this adversary proceeding. Darla J. Johnson and Rodney K. Vincent appeared on behalf of Plaintiff, and Paul D. Boross appeared on behalf of Defendant. Evidence was received and the Court took the matter under advisement.

Plaintiff alleges that he invested and lost money with Defendant, who was not a professional investment advisor or securities broker/dealer. Plaintiff argues that the debt owed to him is in the amount of $1,131,249.00, which amount includes money he gave to Defendant to invest on behalf of himself and others, as well as anticipated earnings on the investments. Plaintiff believes that amount should not be discharged because Defendant obtained the funds through fraud and false representations under 11 U.S.C. § 523(a)(2) and for willful and malicious injury under 11 U.S.C. § 523(a)(6).

For the reasons discussed below, I find that Plaintiff is entitled to a judgment against Defendant in the amount of $228,791.00, which judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### Findings of Fact

1.      Plaintiff emigrated to the United States from Tajikistan in 2000, and currently lives in Lincoln, Nebraska. He graduated from an economics university in Moscow and lived there for 23 years. He worked various jobs in the former Soviet Union, including a job as an auditor for the Ministry of Foreign Affairs, a finance director for a scientific industrial association, and formed his own company to conduct market research and facilitate trade.

2.      Defendant emigrated to the United States from Moldova. She graduated from Doane College in Crete, Nebraska. She has held various jobs in Nebraska, including jobs as a vocational

counselor, bookstore manager, investment operations assistant, computer operator, and driver/warehouse assistant.

3.      Plaintiff and Defendant met in 2002. Both are fluent in the Russian language and commonly conversed in that language. Accordingly, they have no language barriers.

4.      In 2003, Defendant began telling Plaintiff about her day-trading activities in the stock market. According to Plaintiff, Defendant offered to day-trade on his behalf so Plaintiff delivered $25,000.00 in May 2003 to Defendant. Defendant put that money into her own Ameritrade account and purchased and sold stocks through that account. According to Plaintiff, the arrangement was that Defendant would pay to him on a monthly basis the interest that was due on the credit cards from which he borrowed the money for her to invest, and the parties would split the profit from the day-trading. Defendant provided Plaintiff with information to complete spreadsheets to show the profit that was being made as a result of the day-trading activities. Over time, friends and relatives of Plaintiff provided him with money that he turned over to Defendant as additional funds to invest.

5.      Defendant did not testify at the trial. However, during a pre-trial deposition she described the arrangement as a loan or a series of loans. She felt she was entitled to use the money as she pleased, including for investing and for personal expenses. In any event, she did not testify at trial to rebut Plaintiff's testimony.

6.      The investment arrangement between Plaintiff and Defendant continued until 2007 when Plaintiff discovered that there were no funds left in Defendant's Ameritrade account and that all of the funds he had invested were either lost in the stock market or spent by Defendant.

7.      During the course of their relationship, Plaintiff tendered to Defendant the total sum of $503,791.67.[1] Over the years, Defendant returned to Plaintiff the total sum of $377,615.00. Plaintiff classified approximately $275,000.00 of that amount as a return of principal and the remainder as a repayment of the interest on the funds he borrowed on credit cards to invest pursuant to their arrangement.

8.      Plaintiff testified that after the first few months, the total profits reported by Defendant to Plaintiff far exceeded the actual profits that were being made on the Ameritrade account. According to various summary schedules and related information admitted into evidence without objection (Fil. #s 101, 194 and 64), commencing in 2003, the account balances reported by Defendant far exceeded the actual balance in the Ameritrade account. For example, according to Fil. #101, as of December 31, 2003, the balance in the Ameritrade account was $46,942.00, and Defendant reported a balance of $100,000.00. At the end of 2004, the balance in the Ameritrade

---

[1]According to Ex. 97, a schedule of the payments tendered by Plaintiff to Defendant, the amount tendered was $468,891.67. However, Plaintiff testified that in addition to the amounts on the schedule, he also tendered the sum of $9,900.00 in January 2004 and the sum of $25,000.00 in May 2003, for a total amount tendered of $503,791.00.

account was $83,014.00, and Defendant reported a balance of $446,987.00. At the end of 2005, the Ameritrade account has a balance of $8.09, while Defendant was reporting $689,170.00. At the end of 2006, the Ameritrade account balance was $3,662.00, and the balance reported by Defendant was $1,135,320.00. Defendant did not challenge the accuracy of any of these numbers at trial.

8.    Plaintiff testified that the false reporting of the profits and account balances induced him to continue investing money with Defendant. Plaintiff further testified that on numerous occasions he had told Defendant to stop investing if there were losses in the account and that he did not want the principal investment to be at risk. Plaintiff also acknowledged that he understood that the risk of investing in the stock market is that the amount invested could be lost.

9.    Defendant attended the trial but did not testify. Accordingly, Plaintiff's testimony was not rebutted at trial.

### *Discussion*

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). This embodies "a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (internal citation omitted).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995)). "A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *Moen* at 791 (quoting *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *Moen* at 791 (quoting *In re Malcolm*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). False representations may be by omission or commission. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *Moen* at 791 (quoting *LA Capitol Fed. Credit Union v. Melancon (In re Melancon)*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). *Moen* at 791.

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the

representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). In *Field v. Mans*, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)). Justifiable reliance is a minimal standard and does not require the creditor to conduct an investigation, even if the failure to investigate would be considered negligent and the falsity of the representation would be readily discoverable upon an investigation. *Field v. Mans*, 516 U.S. at 70-71. Nonetheless, the creditor may not "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71.

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. *Moen*, 238 B.R. at 791 (citing *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where she should have known it to be false. *Id.*

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen* at 791 (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Van Horne*, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Duggan*, 169 B.R. at 324). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

Here, the undisputed facts established that Defendant induced Plaintiff to invest with her (or in her words, loan her money) by promising him a profit. Thereafter, she induced him to invest more money with her by showing him monthly (and sometimes weekly) spreadsheets and email messages concerning the purported earnings achieved and the value of the investment account. The evidence shows that Defendant continually made false representations to Plaintiff concerning the account's purported value, deliberately giving him the false impression of the profit made on his investment and the balance in the investment account and intentionally causing Plaintiff to deliver more money to Defendant. Plaintiff relied upon her fraud and false representations, and suffered a loss as a result.

As this Court indicated in its Order denying summary judgment (Fil. #81), the question is whether Plaintiff's reliance was justifiable based on his knowledge of the risks involved in investing in the stock market, as well as specifically what representations Defendant made to him.

Defendant chose not to testify at the trial, and her attorney argued in closing that Plaintiff failed to establish justifiable reliance as an element of § 523(a)(2). Specifically, Defendant relies wholly upon the fact that Plaintiff acknowledged he knew there was a risk in investing in the stock market and that he assumed that risk by continuing to provide money to Defendant to invest. However, that argument misses the point. Certainly, Plaintiff knew that there was a risk of loss when investing in the stock market. If this were merely a case where Plaintiff invested the initial $25,000.00 and it was lost, any obligation of Defendant to Plaintiff would likely be dischargeable. However, that is not this case. Here, Defendant engaged in a continuing pattern of misrepresenting earnings and balances which induced Plaintiff to continue investing additional sums. Further, over the years, Defendant returned money to Plaintiff according to their agreement and/or as requested. Therefore, based on the detailed reporting that Defendant provided in accordance with the agreement and the fact that Defendant did return money when required and/or requested, as well as the relationship of trust that the parties had apparently established, I find that Plaintiff's reliance upon Defendant's misrepresentations was justifiable. Accordingly, Plaintiff has established all of the elements for nondischargeability under § 523(a)(2).

The next step is determining the amount of the debt that is nondischargeable. Apparently, over the years Defendant would execute promissory notes in Plaintiff's favor to reflect the purported principal balance in the Ameritrade account owed by Defendant to Plaintiff. At the time of Defendant's bankruptcy filing, Plaintiff was in possession of two such notes totaling the sum of $1,131,249.00. Plaintiff seeks to hold the entire balance due under the promissory notes to be nondischargeable. However, there is no evidence that Defendant obtained $1,131,249.00 from Plaintiff in exchange for the promissory notes. Under § 523(a)(2)(A), the only amount that is nondischargeable is the money that was "obtained by false pretenses, a false representation, or actual fraud." Here, the money that Plaintiff delivered to Defendant was in the total amount of $503,791.00. The difference between that and the balance on the promissory notes represents the "phantom" earnings and profits. In other words, earnings and profits that never existed. Thus, Defendant did not obtain those amounts as the result of fraud or misrepresentations since that money never existed.

Accordingly, the maximum amount that was obtained by Defendant from Plaintiff as a result of her misrepresentations was $503,791.00. The undisputed evidence is that $377,615.00 was returned to Plaintiff over the years. Plaintiff testified that $102,000.00 of the amount returned represented the interest Defendant agreed to pay on Plaintiff's credit card borrowings, while only $275,000.00 of the funds returned represented a return of principal. In other words, $102,000.00 of the amount returned did not reimburse Plaintiff for any principal amounts he invested but instead perpetuated the fraud by paying the interest on Plaintiff's borrowings. Frankly, it is not entirely clear to this court how Plaintiff arrived at his allocation of the money returned between principal and interest, but his testimony was undisputed and there does not appear to be any documentary evidence

to the contrary. Defendant obtained $503,791.00 from Plaintiff and gave back $275,000 of that principal amount. Thus, the nondischargeable amount is the difference of $228,791.00.

IT IS, THEREFORE, ORDERED that for the foregoing reasons, Plaintiff is entitled to a judgment against Defendant in the amount of $228,791.00, which judgment should be determined nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[2]

DATED:  October 2, 2009

BY THE COURT:

  /s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
        *Darla J. Johnson/Rodney K. Vincent
        Paul D. Boross
        Joseph H. Badami
        United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[2]As more fully discussed in this Court's Order of March 17, 2009 (Fil. #81), the evidence was also sufficient to support a finding of nondischargeability under § 523(a)(6).